IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CIPHERLOC CORPORATION, a Texas Corporation, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL DE LA GARZA, an individual, MSR, LLC, and JAMES LEGANKE, as Trustee of the CARMEL TRUST II, <br><br> Defendants. | Civil Case. No. 1:19-CV-01147 |

## PLAINTIFF'S ORIGINAL COMPLAINT

CipherLoc Corporation ("Plaintiff" or "CipherLoc") files this Original Complaint and Application for Declaratory Judgment against defendant Michael De La Garza ("De La Garza"), MSR, LLC ("MSR"), and James LaGanke, as Trustee of the Carmel Trust II (collectively, "Defendants"), as follows:

## I.
## NATURE OF THE CASE

1.      CipherLoc is publicly traded as CLOK on the OTCQB Exchange. Defendant De La Garza joined CipherLoc in November 2010, and served as the President, CEO, and Chairman of the board of CipherLoc until he resigned on July 26, 2019, amid serious allegations of self-dealing and theft of company assets.  During this nine-year period, Defendant De La Garza ignored the statutory requirement for annual shareholder meetings, ran CipherLoc as his personal piggybank and ignored all fundamental requirements of Texas corporation law.  Since De La Garza's resignation and termination from his executive positions with the company (he remains a director), CipherLoc's board of directors and audit committee have investigated the allegations asserted against De La Garza as well as other transactions that took place during his

tenure at the company. This investigation has revealed that De La Garza and former Chief Financial Officer, Pamela Thompson, improperly issued millions of dollars of preferred stock to themselves and entities and trusts created for their benefit. De La Garza later converted some or all of his shares to common shares.

2.      As a result of De La Garza's self-dealing and failure to follow corporate formalities, CipherLoc and its shareholders have been left to unravel years of transactions and to seek injunctive relief against De La Garza's ongoing efforts to take actions on behalf of the company. The CipherLoc board is also tasked with providing notice of and conducting the first annual shareholder meeting in a decade. However, before such a meeting can take place, CipherLoc seeks a determination of whether De La Garza and the Carmel Trust II, successor in interest to former CipherLoc CFO Pamela Thompson, are shareholders.

3.      Therefore, Plaintiff seeks a declaratory judgment that the approximately 9 million shares of CipherLoc's preferred stock taken by De La Garza, and valued at more than $9.9 million, and the 1 million in preferred shares issued to Thompson, through the Carmel Trust II, are void and cancelling such shares from CipherLoc's books. Additionally, CipherLoc seeks to recover damages from Defendant De La Garza for conversion and theft of the preferred shares.

## II.
## PARTIES

4.      Plaintiff CipherLoc Corporation is a Texas corporation with its principal office in Hays County, Texas. Under 28 U.S.C. § 1332(c)(1), the company is deemed to be a citizen of Texas.

5.      Defendant Michael De La Garza is a citizen of the State of California. He can be served with citation at his residence there, 27501 Spectrum Drive, Irvine, California, or wherever he may be found.

6.      Defendant MSR, LLC, is a limited liability company formed under the laws of the State of Nevada by Michael De La Garza and Robin De La Garza, the two managing members of the company, in order to hold the shares of stock De La Garza received from CipherLoc.  The De La Garzas' reside in California.  MSR, LLC can be served through its registered agent, Corporation Service Company, at 112 North Curry Street, Carson City, NV, 89703.

7.      Defendant James LaGanke, trustee of the Carmel  Trust II, is a citizen of the State of Arizona.  He can be served with citation at 13236 N. 7th Street, Ste 4-257, Phoenix, Arizona, 85022-5340, or wherever he may be found.

## III.
## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because it is a civil action between a corporation formed under the laws of the State of Texas on the one hand, and citizens of the State of California and Arizona on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs (diversity jurisdiction).

9.      Additionally, this Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.  An actual justiciable controversy between CipherLoc and the Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether the preferred shares in  CipherLoc were properly issued to De La Garza, as is more particularly described below.

10.      Venue for this action is proper pursuant to 28 U.S.C. § 1391(b)(2) since a substantial part of the events and omissions giving rise to the claim asserted below occurred within this judicial district.

**IV.**
**STATEMENT OF FACTS**

11.     The history of Plaintiff's predecessor entities dates back to June 22, 1953, when the original articles of incorporation for American Mortgage Company of Houston were filed in the State of Texas.  Since that time, the company has gone through multiple mergers, acquisitions, and name changes.  The historical changes relevant to the claims asserted in this case are outlined herein along with the numerous unauthorized and illegal acts Defendant De La Garza undertook in order to gain compete control over CipherLoc and its assets.

12.     On May 26, 2005, the Company, then known as National Scientific Corporation, filed a Certificate of Amendment with the Texas Secretary of State (the "Texas SOS") which provided as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is 191,000,000 shares, consisting of 187,000,000 shares of Common Stock having a par value of $.01 per share, and 4,000,000 shares of Preferred Stock, having a par value of $.10 per share. . . . The number of shares of the Corporation outstanding at the time of such adoption was 91,500,657, and the number of shares entitled to vote thereon was 91,500,657.  The number of shares of the Corporation that voted against the amendment contained herein was 68,248,812 and the number of shares of the Corporation that voted against the amendment contained herein was 290,508.

This was the last filing made with the Texas SOS that altered the articles of incorporation of National Scientific before Defendant De La Garza joined the company in November 2010.

13.     The filing with the Texas SOS was followed up by the submission of a Form 10-Q with the SEC on August 14, 2008, including a balance sheet that confirms the following: "Preferred stock, par value $0.10; 4,000,000 shares authorized, none issued and outstanding," as of the date of the submission.  Additionally, the balance sheet notes that with respect to common stock, "187,000,000 shares authorized, and shares issued and outstanding of 122,082,913 at June 30, 2008."

14.     De La Garza and Patricia Thompson ("Thompson") joined CipherLoc on November 19, 2010.  De La Garza was named the company's President, CEO, and Chairman. Thompson was named Chief Financial Officer and was appointed to the board of directors.  A holdover from prior management, Michael Grollman, stayed on as the third director required to satisfy the minimum board membership requirement in CipherLoc's articles, which was set at no less than three in the Restated Articles of Incorporation dated October 26, 1987.  The Articles of Amendment filed March 27, 1995, also required a minimum of three directors.

15.     Beginning on November 19, 2010, when they were named officers and directors, De La Garza and Thompson dominated CipherLoc's operations and management.  As detailed below, they abused their positions and enriched themselves at the expense of current and future shareholders; they concealed their self-dealing from shareholders, as well as from the disinterested directors who would join the board years later; and De La Garza kept shareholders at bay for nine years by refusing to call a shareholders' meeting.  *See* TEX. BUS. ORGS. CODE § 21.351(a) ("An *annual meeting* of the shareholders of a corporation *shall be held* at a time that is stated in or set in accordance with the corporation's bylaws.") (emphasis added).  Therefore, throughout that nine-year period, the statute of limitations was tolled by the doctrines of adverse domination and fraudulent concealment.

16.     On December 2, 2010, De La Garza filed a certificate of amendment with the Texas SOS, reflecting the appointment of himself and Thompson as officers and directors of CipherLoc.

17.     The next day, on December 3, 2010, De La Garza filed, on behalf of CipherLoc, a form 8-K with the SEC describing the events of November 30, 2010, which included the appointment of De La Garza and Thompson as officers and directors of the company.  Neither

the December 2, 2010 certificate of amendment nor the December 3, 2010 Form 8-K include any mention of either De La Garza or Thompson receiving stock on November 30, 2010.

18.     However, CipherLoc's files also contain (a) an undated Certificate of Designation of Preferences, Rights and Limitations of Series A Preferred Stock (the "Certificate") and (b) a Resolution of the Board of Directors, dated November 29, 2010 (the "Resolution").  The Certificate purports to establish a Series A of 4,000,000 shares of preferred stock, each with 150,000 votes, meaning the preferred shares would hold 600,000,000,000 votes--more than 3600 times the number held by common shareholders.    The Resolution likewise purports to assign 150,000 votes to each share of preferred stock "on all matters presented to be voted by the holders of Common Stock."  The Resolution was signed by De La Garza and Thompson, but not Grollman. As a result, to the extent the Resolution was in fact drafted or created in November 2010, it failed to meet the requirements for a unanimous written consent and was ineffective.  *See* TEX. BUS. ORGS. CODE § 6.201(b) ("the governing authority of a filing entity . . . may take action without holding a meeting, providing notice, or taking a vote if *each person entitled to vote on the action* signs a written consent or consents stating the action taken.") (emphasis added).

19.     Additionally, the creation of a class of super-voting stock required an amendment to CipherLoc's articles of incorporation.  *See*  TEX. BUS. ORGS. CODE § 21.153(a) ("[i]f more than one class or series of shares is authorized under Section 21.152(d), the certificate of formation must state the designations, preferences, limitations, and relative rights, *including voting rights, of each class or series*.") (emphasis added).

20.     The Certificate and the Resolution did not amend CipherLoc's articles because (a) the board did not vote to approve the change in voting rights or agree to submit the matter to the shareholders, (b) the change in voting rights was not approved by the holders of at

least two-thirds of the outstanding shares entitled to vote (indeed, the proposal was not so much as disclosed to shareholders), and (c) neither the Certificate nor the Resolution was filed with the Texas Secretary of State.  *See* Tex. Bus. Orgs. Code § 21.364(a), § 21.052(a)(1), § 21.054, § 21.055, § 21.364(a)(6), and § 21.052(c).

21.     Not long after joining CipherLoc, De La Garza and Thompson forced Grollman out as a director.  For the next four years, De La Garza and Thompson reigned as the only directors, flouting the three-director requirement in CipherLoc's articles of incorporation.

22.     On June 9, 2011, De La Garza filed another Certificate of Amendment with the Texas SOS, this time purporting to amend the articles of incorporation to revise the number of common shares authorized from 191 million to 691 million.  De La Garza cites his ownership of 3 million shares (preferred) and then CFO Thompson's ownership of 1 million shares (preferred) as a basis for showing the required shareholder approval.  However, De La Garza and Thompson did not hold the majority of shares.  Rather, over 180 million shares of common stock were outstanding at the time this certificate was filed by De La Garza and Texas law requires approval of two-thirds of the voting shares to make such an amendment.

23.     On January 10, 2012, De La Garza once again ignored corporate formalities by filing another certificate of amendment with the Texas SOS in order to change the name of the company. In support of this amendment, De La Garza purports to present shareholder consents signed by entities owned by himself, his family, Thompson, and other of his associates representing a total of 45 million common and 4 million preferred shares.  Prior to the submission of these consents, there are no company records or disclosures showing that any of the alleged consenting parties own common or preferred stock in the company.

24.     On January 16, 2013, De La Garza filed his first Form 10-K on behalf of the Company, citing that all 4 million preferred shares the Company was authorized to issue were in fact issued to De La Garza and Thompson as of April 11, 2012, having allegedly been granted on November 30, 2010.  The disclosure further stated that the issuance of stock had been recorded as an expense to CipherLoc in the amount of $38,000.

25.     De La Garza and Thompson were precluded from issuing four million preferred shares to themselves.  Assigned a par value of $.10/share by CipherLoc's prior board, the minimum consideration required to purchase those shares was $400,000.  TEX. BUS. ORGS. CODE § 21.161(a).(the "[c]onsideration to be received by a corporation for the issuance of shares *with par value may not be less than the par value of the shares*") (emphasis added).  But De La Garza and Thompson ascribed the shares with value of $0.0095/share, less than one-tenth their par value.

26.     Moreover, despite the statutory prohibition on issuance until the required consideration had been paid or delivered to CipherLoc, De La Garza and Thompson provided nothing and imposed the expense on CipherLoc.   *See* TEX. BUS. ORGS. CODE § 21.157(b) (prohibiting issuance pending receipt of payment or other consideration).  De La Garza and Thompson altogether ignored the procedures under the Texas Business Organizations Code (the "TBOC") for ensuring the legitimacy and fairness of interested director and officer transactions. *See* TEX. BUS. ORGS. CODE § 21.418(b).

27.     A subsequent 10-K filed by De La Garza on behalf of the company stated that as of January 31, 2013, the company had 212,938,712 common shares and 4 million preferred shares outstanding.

28.     On June 3, 2013, a certificate of amendment was filed with the Texas SOS, based on a purported unanimous consent of De La Garza and Thompson, to authorize an increase in the number of shares that could be issued by the Company to 691 million common shares and 10 million in preferred shares.  No evidence that this amendment was approved by the required two-thirds of voting shares was submitted with the certificate as is required.  Rather, De La Garza once again relied exclusively on the alleged ownership of the preferred shares by himself and Thompson as authority for the amendment.

29.     There are, however, no board minutes, resolutions, or any other documents reflecting the approval of the issuance of preferred stock to De La Garza or Thompson.

30.     The June 2013 certificate of amendment did not amend CipherLoc's articles because (a) a properly-constituted board of at least three directors did not vote to approve the change in authorized shares or agree to submit the matter to the shareholders and (b) the change in authorized capitalization was not approved by the holders of at least two-thirds of the outstanding shares entitled to vote.  *See* TEX. BUS. ORGS. CODE § 21.364(a), § 21.052(a)(1), § 21.054, § 21.055, § 21.364(a)(6), and § 21.052(c).

31.     On December 18, 2013, De La Garza again tried to alter CipherLoc's articles of incorporation in order to allow each share of preferred stock he purportedly owned to be converted to 150 shares of common stock in the company.  Like those before it, this amendment was not approved by the required two-thirds majority of voting shares before it was filed with the Texas Secretary of State.

32.     This happened again on August 27, 2014, when De La Garza purported to amend the company's articles of incorporation to provide detailed conversion rights for the holders of preferred stock—all of which were allegedly owned by himself and the CFO, Thompson.  De

La Garza cited only 51.6 percent approval of this amendment, less than the required two-thirds majority.

33.     On September 6, 2014, De La Garza filed a Form 8-K with the SEC attaching alleged amended bylaws for CipherLoc.

34.     A few days later, on September 12, 2014, a Form 14-C submitted to the SEC by the De La Garza reflects an alleged modification of the 4 million preferred shares in order to allow super voting rights of 150 votes per share.

35.     On December 30, 2014, then CFO, Thompson, resigned as CFO and board member due to health issues, leaving De La Garza as the CEO and sole member of the board.

36.     Thompson is now deceased and her shares are held by the Carmel Trust II of which her husband James LaGanke is the trustee.

37.     On January 5, 2015, De La Garza appointed Eric Marquez and Gino Mauriello to the board.  This was the first time in four years that CipherLoc had the required three directors.

38.     According to a Form 10-Q filed with the SEC on May 20, 2015, De La Garza caused the company to issue him 6,000,000 of the purported remaining shares of Series A Preferred Stock on February 5, 2015.  Series A Preferred Stock is described as being convertible to common stock at a rate of 1 to 1.5.  De La Garza did not compensate the company in any way for the issuance of the stock. Rather, this transaction was recorded by the company as $9,900,000 in stock compensation based on the market value of the Company's common stock.  This stock was issued in addition to, not in lieu of, compensation De La Garza was already receiving from the company. In fact, company financials reflect that De La Garza also received a salary of over $348,000, a bonus of over $362,000, pension/deferred compensation of over $386,000 and another

$36,000 in compensation in 2015. This was in addition to the stock awards issued to De La Garza for that year.

39.     There are no board minutes, resolutions, or any other documents reflecting the approval of the issuance of stock to De La Garza. The only board approval of these shares is contained in a set of minutes De La Garza drafted to recount a fictional February 3, 2015 board meeting.   In reality, De La Garza simply issued himself preferred stock valued at nearly $10 million.  At the time De La Garza took this action, the company was experiencing significant net losses.  Losses for the previous year, 2014, reportedly totaled more than $1,000,000.00.  With the issuance of preferred stock to De La Garza, the company's net losses exceeded $10 million in 2015.

40.     The issuance of 6,000,000 preferred shares to De La Garza is void because (a) a properly-constituted board of at least three directors had not voted to approve the change in authorized shares from four million to ten million or agreed to submit the matter to the shareholders (only De La Garza and Thompson were on the board at the time of the increase) and (b) the change in authorized capitalization was not approved by the holders of at least two-thirds of the outstanding shares entitled to vote.  *See* TEX. BUS. ORGS. CODE § 21.364(a), § 21.052(a)(1), § 21.054, § 21.055, § 21.364(a)(6), and § 21.052(c).

41.     Furthermore, the TBOC prohibited CipherLoc's issuance of preferred shares until the required consideration had been paid or delivered and De La Garza provided nothing to CipherLoc.   *See* TEX. BUS. ORGS. CODE § 21.157(b) (prohibiting issuance pending receipt of payment or other consideration).

42.     Finally, De La Garza ignored the TBOC's procedures for ensuring the legitimacy and fairness of interested director and officer transactions.  *See* TEX. BUS. ORGS. CODE § 21.418(b).

43.     On March 26, 2018, De La Garza took further action to amend the articles of incorporation to allow for conversion of the preferred stock he had awarded himself to 1.5 shares of common stock with approval of the board.  There is once again no evidence that this amendment was approved by two-thirds of the voting common shares.

44.     Through these transactions, De La Garza has attempted to award himself 9 million shares of preferred stock, with an alleged right to be converted to 13.5 million shares of common stock, to the detriment of the Company and its other shareholders.  De La Garza ignored all corporate formalities and rights of other shareholders protected by those formalities to his own benefit in a further effort to use CipherLoc and its assets to serve his own personal interests.

45.     At the same time, De La Garza took further steps to try to reduce the number of common shares, through reverse stock splits and similar mechanisms, in order to improperly gain a majority interest in the Company.

46.     For this reason, CipherLoc has no choice but to seek to invalidate the alleged ownership of the preferred shares held by De La Garza and Thompson, and MSR, LLC and the Carmel Trust II as successors in interest, and to recover damages caused by De La Garza's unlawful actions.

## V.
## <u>CAUSES OF ACTION</u>

**A.     Count I – Conversion.**

47.     Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through 46, inclusive, of this Complaint.

48.     Pursuant to Texas corporations law and CipherLoc bylaws, the number of shares of stock and the attributes of that stock are to be exclusively determined by the shareholders of the company.  Changes must be approved by a two-thirds affirmative vote of shareholders.

49.     Despite the law specifically providing for how a Texas corporation must amend its articles of incorporation in order to make changes regarding the number of shares the company is authorized to issue, De La Garza unilaterally increased the number of shares provided for under CipherLoc's articles of incorporation without a shareholder vote and solely for his own personal enrichment and benefit.  Moreover, even when De La Garza publicly stated in filings made with the Texas SOS and the SEC that there was majority approval for these increases, this was not in fact the case.

50.     De La Garza used his position as president and CEO of CipherLoc in order to exercise dominion and control over the assets of the company for his own benefit and without the approval of CipherLoc's board of directors or shareholders.

51.     Thompson likewise used her position as CFO of CipherLoc in order to exercise dominion and control over the assets of the company for her own benefit and without approval of CipherLoc's board of directors or shareholders.

52.     Additionally, after unilaterally increasing the number of shares of preferred and common stock that could be issued by CipherLoc, in violation of its bylaws and Texas law, De La Garza then proceeded to award himself additional compensation in the form of at least 9 million shares of preferred stock.  This was done without proper approval of the board of directors and De La Garza provided no consideration for the shares.  De La Garza valued these shares of stock at $9.9 million in subsequent disclosures.

53.     De La Garza has further attempted to grant himself super-voting power (150 votes per share of Preferred Stock improperly awarded) while simultaneously seeking to reduce the number of common shares outstanding through reverse stock splits and similar mechanisms. He further crafted bylaws that would prevent the company from merging or taking other actions without first paying him for the stolen shares.  None of this conduct was authorized.

54.     De La Garza's and Thompson's refusal to relinquish the stolen shares of stock has undermined CipherLoc's relationship with its shareholders, diminished the value of properly issued stock, and caused the company's liabilities to exceed its assets by over $10 million.

55.     Therefore, Plaintiff seeks return of all of the stolen shares and documents purporting to evidence De La Garza's and Thompson's ownership of the stolen shares, including those shares held by MSR and the Carmel Trust II, plus damages within the jurisdictional limits of this court.

**B.      Count II - Texas Theft Liability Act.**

56.     Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through 55, inclusive, of this Complaint.

57.     Plaintiff brings this action under the Texas Theft Liability Act for an unlawful appropriation of property under Texas Penal Code section 31.03.

58.     Plaintiff was entitled to retain ownership of all preferred shares it was authorized to issue until such time those shares were properly issued by the company, in compliance with all requirements under the company's articles, bylaws and Texas law.

59.     In complete disregard for Plaintiff's rights, De La Garza unlawfully appropriated the preferred shares in violation of Texas Penal Code 31.03, by issuing those shares

to himself without authority to do so.  De La Garza then used his illegal ownership of those shares to take further actions to the detriment of the company and its shareholders.

60.     De La Garza's unlawful appropriation was made with the intent to deprive the company of the preferred shares and in order to unlawfully exercise control over the company and its assets.

61.     De La Garza's conduct caused injury to the Plaintiff including reduction in the overall value of the company of at least $10 million.  Upon proof of actual damages, Plaintiff is entitled to additional statutory damages under Texas Civil Practices and Remedies Code section 134.005(a)(1).  Plaintiff seeks actual damages within the jurisdictional limits of this court.

62.     Plaintiff's injury resulted from De La Garza's malice or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practices and Remedies Code section 41.003(a).  De La Garza intentionally took steps to defraud the company and its investors and to hide the true facts from both.

63.     Plaintiff is also entitled to recover court costs and reasonable and necessary attorney fees under Texas Civil Practices and Remedies Code section 134.005(b).  As a result of Plaintiff's theft of shares, the company has been forced to hire legal counsel in order to recover or void those shares.

### C.     Count III - Declaratory Judgment

64.     Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through 63, inclusive, of this Complaint.

65.     There is a genuine and bona fide dispute and actual controversy  and disagreement between CipherLoc on the one hand and Defendants on the other hand regarding whether the preferred shares issued to De La Garza and Thompson were properly authorized.

Section 20.002(c)(2) of the TBOC authorizes CipherLoc to prosecute a claim "against an officer or director or former officer or director of the corporation for exceeding that person's authority." TEX. BUS. ORGS. CODE § 20.002(c)(2).

66.     Therefore, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff seeks a declaration that the issuance and grant of preferred shares to De La Garza and Thompson, and all actions taken by these individuals in reliance on their ownership of those shares, are void and removing it from CipherLoc's books.

67.     The Carmel Trust II and MSR, LLC are not innocent purchasers of the stock for value.  Rather, they received transfer of the preferred shares with knowledge that it had been wrongfully obtained and without providing any consideration for the transfer.

68.     Declaratory relief is necessary in this case in order to clarify the ownership of preferred shares in the company and so that the company can proceed with its obligations to conduct a meeting and vote of all shareholders as provided for in the company's bylaws.  Without such relief, any action taken by a vote of outstanding shares will remain uncertain. Additionally, CipherLoc is concerned that Defendants may attempt to transfer the stolen shares to an innocent third-party.   For these reasons, the Plaintiff asks for judgment against Defendants declaring that the issuance and granting of preferred shares in CipherLoc, and its predecessors, to De La Garza and Thompson, and Defendants MSR and LaGanke (as Trustee of the Carmel Trust II) as their successors in interest, is void and cancelling the transfer of those shares from CipherLoc's books.

## VI.
## PRAYER

For these reasons, Plaintiff CipherLoc Corporation asks for declaratory judgment against the Defendants, James LaGanke (as Trustee), MSR, LLC, and Michael De La Garza and in favor of the Plaintiff that the issuance and granting of preferred shares in CipherLoc to the

Defendants is void.  Plaintiff further seeks the following relief with respect to Defendant Michael De La Garza:

        a.      Actual damages;

        b.      Statutory damages;

        c.      Exemplary damages;

        d.      Reasonable attorney fees; and

        e.      Costs of suit.

Plaintiff CipherLoc Corporation seeks all such other relief the Court deems appropriate.

Dated:  November 22, 2019

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      */s/  Dwight M. Francis*
        DWIGHT M. FRANCIS
        Texas Bar No. 00785877
        AIMEE C. OLESON
        Texas Bar No. 24036391
        2200 Ross Avenue, 24th Floor
        Dallas, Texas 75201
        Tel. (469) 391-7400
        Fax (469) 391-7401
        dfrancis@sheppardmullin.com
        aoleson@sheppardmullin.com

        ATTORNEYS FOR CIPHERLOC CORPORATION