# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CIPHERLOC CORPORATION, A TEXAS CORPORATION,<br>   *Plaintiff*<br><br>v.<br><br>MICHAEL DE LA GARZA, AN INDIVIDUAL, MSR, LLC, AND JAMES LAGANKE, AS TRUSTEE OF THE CARMEL TRUST II,<br>   *Defendants* | Case No. 1:19-CV-1147-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
    **UNITED STATES DISTRICT JUDGE**

Before this Court are James LaGanke's Motion to Dismiss, filed on March 11, 2020 (Dkt. No. 10); Plaintiff's Response, filed on March 25, 2020 (Dkt. No. 14); and LaGanke's Reply, filed on April 1, 2020 (Dkt. No. 17).

The District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

Plaintiff CipherLoc Corporation is a Texas corporation in the data security business, with its principal place of business in Hays County, Texas. Defendant Michael De La Garza, a California resident, served as CipherLoc's President, Chief Executive Officer, and Chairman of the Board from November 2010 until he resigned in July 2019. Plaintiff alleges that during this nine-year period, De La Garza and Pamela Thompson, CipherLoc's former Chief Financial Officer, board

member, and an Arizona resident (collectively, "Corporate Officers"), "improperly issued millions of dollars of preferred stock to themselves and entities and trusts created for their benefit," and later converted some or all of their shares to common shares. Dkt. No. 1 at ¶ 1. CipherLoc alleges that the Corporate Officers used their positions as officers of the company "in order to exercise dominion and control over the assets of the company for [their] own benefit and without the approval of CipherLoc's board of directors or shareholders." *Id.* at ¶¶ 50-51. Specifically, CipherLoc alleges that the Corporate Officers unilaterally increased the number of shares permitted under CipherLoc's articles of incorporation without a shareholder vote and solely for their own personal enrichment and benefit, in violation of Texas law. CipherLoc also alleges that the Corporate Officers falsely stated in filings with the Texas Secretary of State's Office and the U.S. Securities and Exchange Commission that the majority of shareholders had approved the increase in the number of shares that could be issued.

Thompson resigned as CFO due to health issues on December 30, 2014, and passed away in August 2015. Thompson's husband, James LaGanke, also an Arizona resident, became the trustee of Thompson's trust, the "Carmel Trust II." Plaintiffs allege that De La Garza resigned on July 26, 2019, "amid serious allegations of self-dealing and theft of company assets." *Id.* at ¶ 1.

On November 22, 2019, CipherLoc filed this lawsuit against De La Garza; MSR, LLC, a Nevada limited liability company created "in order to hold shares of stock De La Garza received from CipherLoc"; and LaGanke, as Trustee of the Carmel Trust II. *Id.* at ¶ 6. CipherLoc alleges that the Corporate Officers' refusal to relinquish the stolen shares of stock has undermined CipherLoc's relationship with its shareholders, diminished the value of properly issued stock, and caused the company's liabilities to exceed its assets by more than $10 million. CipherLoc alleges conversion and unlawful appropriation of property under the Texas Theft Liability Act, and seeks

a declaratory judgment that "the issuance and grant of preferred shares to De La Garza and Thompson, and all actions taken by these individuals in reliance on their ownership of those shares, are void and removing it from CipherLoc's books." *Id.* at ¶ 66. CipherLoc further alleges that: "The Carmel Trust II and MSR, LLC are not innocent purchasers of the stock for value. Rather, they received transfer of the preferred shares with knowledge that it had been wrongfully obtained and without providing any consideration for the transfer." *Id.* at ¶ 67. CipherLoc seeks the "return of all of the stolen shares and documents purporting to evidence [the Corporate Officers'] ownership of the stolen shares, including those shares held by MSR and the Carmel Trust II, plus damages within the jurisdictional limits of this court." *Id.* at ¶ 55.

LaGanke, as Trustee of the Carmel Trust II, filed the Motion to Dismiss under FED. R. CIV. P. 12(b)(2), arguing that the Court does not have personal jurisdiction over him "because neither LaGanke nor the settlor of the Carmel II Trust had any connection with the State of Texas." Dkt. No. 10 at 1. CipherLoc disagrees, arguing that Thompson directed her tortious conduct toward Texas and, therefore, the Court has jurisdiction over her successor in interest, LaGanke.

## II.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnson v. Multidata Sys. Int'l Corp.* 523 F.3d 602, 609 (5th Cir. 2008)). In determining whether the plaintiff has presented a *prima facie* case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations,

3

and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether this court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101. In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). For minimum contacts to exist, "a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona v.*

*Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "That requirement is the 'constitutional touchstone' of personal jurisdiction. It 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* at 193-94. The plaintiff cannot supply "the only link between the defendant and the forum. Rather, jurisdiction is proper only where the defendant *himself* made deliberate contact with the forum." *Id.* at 194 (quotations omitted). A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).

### III.   Analysis

CipherLoc relies only on the doctrine of specific jurisdiction to support its argument that the Court has jurisdiction over LaGanke. The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona*, 924 F.3d at 193. If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

**A. LaGanke Has Minimum Contacts with Texas as Thompson's Successor in Interest**

LaGanke argues that CipherLoc has failed to establish that he had sufficient minimum contacts with Texas because he is an Arizona resident and "did not have anything to do with Texas." Dkt. No. 10 at ¶ 13. He argues that he is merely the Trustee of Thompson's trust, and was at all relevant times based in Arizona and "never invoked the benefits and protections of Texas law." *Id.* LaGanke also argues that CipherLoc has failed to explain how *Thompson's* alleged misdeeds ten years ago create personal jurisdiction over LaGanke.

As noted, LaGanke is Thompson's widower who became Trustee of Carmel Trust II (the owner of the stock shares at issue) after her death. LaGanke does not dispute that he and the Carmel Trust II are Thompson's successors in interest. *See* LaGanke's Motion to Dismiss, Dkt. No. 10 at ¶ 2 (noting that Carmel Trust II "became [Thompson's] successor-in-interest following her death"); *id.* at ¶ 11 ("Neither LaGanke nor his predecessor in interest . . . ."); *id.* at ¶ 14 (stating that CipherLoc moving its headquarters to Texas "fails to establish a justification to sue her successor"); *see also Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 464 (1980) ("[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.").

The Fifth Circuit has held "that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *see also Benson v. Rosenthal*, 116 F. Supp. 3d 702, 704 n.6 (E.D. La. 2015) ("Plaintiff correctly states that a finding of personal jurisdiction over Rosenthal will operate as a finding of personal jurisdiction over Rowe, as a substituted successor-

6

in-interest.").[1] "The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin*, 294 F.3d at 653. Because LaGanke does not dispute that he and Carmel Trust II are successors in interest to Thompson, the Court must determine whether Thompson had sufficient minimum contacts with Texas.

LaGanke argues that Thompson would not be subject to jurisdiction in Texas because during her employment with CipherLoc (from 2010 to 2014), she lived and worked in Arizona, not Texas. In addition, LaGanke notes that CipherLoc's principal place of business was Phoenix, Arizona, not Texas, during that time frame. Thus, LaGanke argues, Thompson's only connection to Texas was that she worked for a company that was incorporated in Texas.[2]

First, Thompson did not merely work for a Texas company; she was CipherLoc's CFO and a member of its board of directors. In addition, although not personally present in Texas, Thompson is alleged to have violated Texas law repeatedly and "cheated shareholders including shareholders

---

[1] *See also Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894, 906 (1st Cir. 1987) (stating that, "once in personam jurisdiction has been found over the original party, it exists over the substituted party despite its lack of contacts with the forum if the substituted party had an opportunity to challenge its joinder or substitution"); *Minn. Mining & Mfg. Co. v. Eco Chem Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (finding that the exercise of personal jurisdiction over a successor corporation with no ties to the forum state was appropriate when the successor corporation was a "mere continuation" of the predecessor corporation and exercise of personal jurisdiction would have been appropriate over the predecessor); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637-38 (8th Cir. 1975) (finding that the chief executive officer of a corporation was subject to in personam jurisdiction based on the corporation's activities in the forum state when the evidence indicated that the corporation was merely the alter ego of the chief executive officer).

[2] LaGanke also argues in his Reply that "Mr. LaGanke *believes* the stock in dispute was issued pursuant to a written employment agreement" (emphasis added) and that the original employment agreement "likely contained a forum selection clause of Arizona." Dkt. No. 17 at ¶ 7. LaGanke, however, failed to produce any evidence to support this theory. Even if true, it does not preclude the conclusion that Thompson purposefully directed her activities at Texas, as explained below. Once again, in determining whether the plaintiff has presented a prima facie case of personal jurisdiction, the court must resolve "all conflicts between the facts contained in the parties' affidavits and other documentation" in plaintiff's favor. *Patterson*, 826 F.3d at 233

in Texas." Dkt. No. 14 at 1. Jurisdiction in the forum state "may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King*, 471 U.S. 462 at 476. As the Supreme Court explained:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* Thus, a court may exercise personal jurisdiction over a corporate officer who allegedly committed an intentional tort directed at the forum state. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 974 (5th Cir. 1984) ("Nor is due process offended when a non-resident corporate agent or employee is made subject to personal jurisdiction in the forum state for a foreseeable consequence therein of his personal act performed elsewhere, although allegedly performed only as a corporate functionary."); *see also Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 795 (5th Cir. 2007) (holding that fiduciary shield doctrine did not prohibit defendant from being held personally liable for his own tortious conduct simply because he is an officer of a corporation).

Here, CipherLoc alleges that Thompson made false representations in filings with the Texas Secretary of State's Office to facilitate the improper issuance of stock by a Texas company to herself and De La Garza. Specifically, CipherLoc alleges that Thompson knowingly signed resolutions pursuant to Texas law that authorized the amendment of CipherLoc's articles of incorporation "in order to effectuate the conversion of preferred shares of CipherLoc stock by Thompson and De La Garza." Dkt. No. 14 at p. 6. CipherLoc alleges that Thompson then signed

8

and filed those resolutions with the Texas Secretary of State's Office. Thus, Thompson is alleged to have purposefully directed her tortious activities toward Texas and, therefore, she should have reasonably anticipated being haled into court here. The defendant is not being haled into court based "solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475.

### B. CipherLoc's Cause of Action Arises out of the Forum-Related Contacts

Considering the second factor in the specific jurisdiction inquiry, CipherLoc's causes of action clearly arise out of or result from Thompson's forum-related contacts. All of CipherLoc's allegations in this case are based on Thompson and De La Garza's alleged improper filings with the state of Texas and their alleged tortious activity directed at CipherLoc.

### C. Exercise of Personal Jurisdiction Is Fair and Reasonable

Finally, LaGanke has not established that the exercise of jurisdiction over him would violate traditional notions of fair play and substantial justice. In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof, and "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759-60. Courts consider the following five factors to determine whether the exercise of jurisdiction is fair and reasonable: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* Only one factor, the burden on LaGanke, weighs in his favor. But CipherLoc's interest in obtaining convenient and effective relief in Texas is just as great.

Because Texas clearly has an interest in litigation arising from the alleged filing of false corporate records with a state office in order to perpetrate the taking of shares in a Texas corporation, and judicial economy is served by maintaining the action in a single forum, the Court

finds that it is fair and reasonable to exercise jurisdiction over LaGanke. *Id.* at 764 ("The generalized difficulty in traveling to Texas is here not a burden violative of due process and we find that the court may exercise[ ] personal jurisdiction over [defendants] with respect to [plaintiff's] tort claims."). Accordingly, assertion of specific jurisdiction over LaGanke is proper.

## IV.     Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** James LaGanke's Motion to Dismiss (Dkt. No. 10).

The undersigned **FURTHER ORDERS** the Clerk to **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 6, 2020.

                                                      SUSAN HIGHTOWER
                                                    UNITED STATES MAGISTRATE JUDGE